UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PORTFOLIO FB-IDAHO, LLC, a Delaware Limited Liability Company, and ANACONDA INVESTMENTS, LLC, a Delaware Limited Liability Company,<br><br>        Plaintiffs/<br>        Counterdefendants,<br><br>   v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST BANK OF IDAHO,<br><br>        Defendant/<br>       Counterclaimant. | Case No. 1:10-CV-377-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiffs' Motion for Summary Judgement (Dkt. 9), Defendant's Motion for Partial Summary Judgment (Dkt.17), and Plaintiff's Motion to Allow Late Filing of Affidavit of Gregg Lovell in Support of Plaintiff's Reply Memorandum (Dkt. 19). The Court held oral argument on the motions on January 25, 2011 and now issues the following Memorandum Decision and Order.

## BACKGROUND

This case involves determination of the ownership rights of a fifty-eight percent

interest in a defaulted multi-million dollar loan.  The loan is secured by a deed of trust on real property located in Blaine County, Idaho.  Plaintiffs Anaconda and Portfolio assert that they acquired the rights to the loan interest from Idaho First Bank ("IFB"), the highest bidder at auction for the interest.  Defendant Federal Deposit Insurance Corporation ("FDIC") and Intervenor, Stilwyn, Inc., allege that IFB never acquired the interest from FDIC.

In May 2007, First Bank of Idaho ("FBI") made a loan to Stilwyn in the principal amount of $9.5 million dollars.  The loan was evidenced by a promissory note dated May 7, 2007.  *Kantor Aff.* ¶ 4, Dkt. 9-3; *Williamson Aff.* ¶ 4, Dkt. 11-1.  The loan was secured by a construction deed of trust dated May 17, 2007, benefitting FBI and encumbering real property located in Blaine County, Idaho.  The deed was recorded on May 18, 2007 in Blaine County.  *Lovell Aff.* ¶ 2, Dkt. 9-8; *Kantor Aff.* ¶ 4, Dkt. 9-3; *Williamson Aff.* ¶ 5, Dkt. 11-1.  At that time, Farmers National Bank acquired a forty-two percent interest in the Stilwyn loan through a loan participation agreement.  FBI retained a fifty-eight percent interest.  *Kantor Aff.* ¶ 5, Dkt. 9-3; *Williamson Aff.* ¶ 6, Dkt. 11-1.

On April 29, 2009, FDIC was appointed receiver for FBI.  As receiver, FDIC took control of the assets of the failed institution, including FBI's interest in the Stilwyn loan and the real property.  *Barhoover Aff.* ¶ 2, Dkt. 11-2.  FDIC placed FBI's interest in the Stilwyn loan up for auction on September 29, 2009.  *Lovell Aff.* ¶ 3, Dkt. 9-8; *Barhoover Aff.* ¶ 3, Dkt. 11-2.  IFB submitted the highest bid at auction for the Stilwyn loan interest, and was awarded the right to purchase the loan interest.  *Lovell Aff.* ¶ 3, Dkt. 9-8;

*Barhoover Aff.* ¶ 5, Dkt. 11-2. The closing date on the contract between IFB and FDIC for purchase of the Stilwyn loan interest was October 22, 2009.

After the auction, IFB wired $1.6 million to DebtX, an agent of FDIC, to distribute to FDIC upon closing of the Stilwyn loan. The amount was held in escrow pending delivery of the Note, Bill of Sale and original Assignment and Assumption Agreement.

On October 7, 2009, IFB and Plaintiff Anaconda Investments, LLC entered into a loan purchase agreement. Under that agreement, IFB agreed to sell the Stilwyn loan interest to Anaconda for 105% of its purchase price.

After the auction, FDIC learned that IFB violated the terms of the auction by entering into the pre-arranged sale of the loan interest to Anaconda. On October 27, 2009, FDIC notified IFB that due to the breach of the sales agreement and bid package, FDIC would not close on the sale of the Stilwyn loan interest.

IFB and FDIC agreed to rescind the loan sale agreement and the assignment. FDIC never indorsed or delivered the Note, Bill of Sale, Deed of Trust, or original Assignment to IFB. The assignment was never recorded in the Blaine County records. The original documents remained in FDIC's posession. On November 16, 2009, FDIC instructed DebtX to release and return all IFB payments held in escrow and DebtX wired all funds back to IFB.

On October 25, 2009, Anaconda and IFB entered into an assignment supposedly transferring IFB's interest in the Stilwyn loan to Anaconda. Anaconda paid the purchase

price agreed upon by the parties in their October 7, 2009 purchase agreement.

On February 16, 2010, Anaconda transferred its interest in the Stilwyn loan to Plaintiff Portfolio FB-Idaho, LLC. This assignment was recorded in Blaine County, Idaho against the Real Property.

On May 10, 2010, FDIC made a demand upon Plaintiffs Anaconda and Portfolio to release the Portfolio Assignment. Anaconda and Portfolio did not comply.

On July 5, 2010, Anaconda and Portfolio filed a complaint in Idaho state court seeking a declaratory judgment of their rights in the Stilwyn loan and rights to the transfer of the loan documentation. Dkt. 1, Ex. 3. On July 15, 2010, Plaintiffs recorded a Notice of Lis Pendens in Blaine County against the Real Property.

FDIC removed the case to federal court, and asserted counterclaims against Plaintiffs, alleging slander of title and a violation of [12 U.S.C. §1825(b)(2)](). Dkt. 3. Plaintiffs moved for summary judgment on their claim against Defendant. Dkt. 9. FDIC moved for partial summary judgment on its §1825(b)(2) claim against Plaintiff. Dkt. 17.

## ANALYSIS

1. **Motion to Allow Late Filing**

Pursuant to District of Idaho Local Civil Rule 6.1, Plaintiffs seek an extension of time to file the affidavit of Greg Lovell in Support of Plaintiffs' Reply to Defendant's Motion for Partial Summary Judgment. Under the Court's local rules, the affidavit should have been filed no later than October 21, 2010. The Motion to Allow Late Filing, with the affidavit at issue attached, was filed on November 9, 2010.

Plaintiffs argue that Lovell is not a party in the suit and his cooperation was required to obtain his affidavit. Plaintiffs' counsel testifies that he hand-delivered to Lovell's attorney a draft of a proposed affidavit on October 15 with Plaintiffs' request that it be executed and returned by October 21. *Ludwig Aff.* 1, Ex. A, Dkt. 19-2. On November 4, Plaintiffs' counsel provided another draft of the proposed affidavit at the request of Lovell's counsel. *Ludwig Aff.*, Ex. B, Dkt. 19-2. Plaintiffs' counsel received Lovell's signed affidavit on November 8. *Ludwig Aff.*, ¶ 1.

Local Civil Rule 6.1 states that requests to extend briefing periods must state the specific reason for the requested time extension. *See Dist. Idaho Loc. Civ. R.* 6.1. Further, the requesting party must apprise the Court if they have previously been granted any time extensions in the particular action. *Id.* Such requests will be granted only upon a showing of good cause. *Id.*

Here, Plaintiffs have stated a specific reason for the time extension – the affiant is represented by counsel and all communication with the affiant was, as required, through counsel. Further, Plaintiffs' hand-delivered the proposed affidavit with instructions to Lovell's attorney several days before the filing deadline. Defendant's response was filed on October 4 and, presumably, Plaintiffs required some time to prepare the reply and the necessary supporting documents before delivering the draft of the affidavit to Lovell's attorney. Plaintiffs also have not requested or been granted any time extensions in this action thus far. Moreover, there is no prejudice to Defendant because when the Court decided to address the motion to intervene before addressing the pending motions for

MEMORANDUM DECISION AND ORDER - 5

summary judgment, the Court decided to allow additional briefing on the motions for summary judgment. Thus, the parties have had an opportunity to address the affidavit. For these reasons, the Court finds good cause to grant Plaintiffs' Motion to Allow Late Filing of the Lovell Affidavit.

2.     **Motions for Summary Judgment**

　　A.     *Legal Standard*

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.,* 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v.*

*Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id*. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir.1988). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

### B. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs move for Summary Judgment on their claim for declaratory judgment. Essentially, they argue that the loan sale agreement between FDIC and IFB included an express closing date of October 22, 2009, and that the rights to the Stilwyn loan interest were sold and transferred from FDIC to IFB on that date as a matter of law. They argue that because IFB entered into a loan sale agreement with Anaconda, IFB then sold and transferred the Stilwyn loan interest to Anaconda upon execution of the agreement. In

turn, they argue that Anaconda assigned the loan interest to Portfolio.

The agreement between Anaconda and IFB was titled "Assignment and Assumption of Interests and Obligations." *Id*. Thus, Anaconda received any interest it has in the Stilwyn loan as an assignee of IFB's interest in the loan. *Kantor Aff.*, ¶ 12, Ex. 5, Dkt. 9-3.

An assignee stands in no better position than his assignor stood. *Murr v. Selag Corp.*, 747 P.2d 1302, 1309 (Ct.App. 1987). As an assignee of IFB's interests, Anaconda stands in IFB's shoes with respect to the FDIC, and is subject to the same claims and defenses that the FDIC could assert against IFB. Portfolio, as an assignee of Anaconda, stands in no better position than its assignor, Anaconda.

Accordingly, the Court must determine IFB's interest in the Stilwyn loan. A prerequisite to being qualified to bid on and purchase the Stilwyn loan interest at the auction was the requirement that prospective bidders be banks-only. Prospective bidder banks also had to agree that they had not and would not enter into negotiations or agreements with non-banks to purchase the Stilwyn loan interest prior to the prospective bidder's closing with FDIC. These requirements were outlined in the Bid Package, as well as the loan agreement between IFB and FDIC.

The Invitation to Bid was one document in the Bid Package. It stated that a bank or credit union should not enter into negotiations or agreements with a non-bank concerning the sale of the loan interest prior to the sale. *Cather Aff.*, ¶ 3, Ex. A, Dkt. 22. It further stated that "[s]uch prohibited negotiations and agreements expressly include,

without limitation, joint ventures, agreements to sell or service the assets, agency agreements, brokerage agreements, and any other agreement for which the purpose is to allow non-banks to participate in this offering." *Cather Aff.*, ¶ 3, Ex. A, Dkt. 22.

To be eligible to bid, prospective bidders were also required to execute a Bid Certification. It provided that any bid shall constitute an offer to purchase the loan in the bid "upon the terms and conditions set forth in the documents comprising the Bid Package." *Cather Aff.*, Ex. C at 1, Dkt. 22. It went on to state that the winning bidder "agrees to purchase [the loan] and to comply with all terms and conditions contained in the several documents included in the Bid Package, including the form of Loan Sale Agreement." *Cather Aff.*, Ex. C at 1, Dkt. 22.

Bidders were also required to execute a Purchaser Eligibility Certification. The Purchaser Eligibility Certification stated that "[t]he purpose of the Purchaser Eligibility Certification is to identify prospective purchasers who are not eligible to purchase assets of failed financial institutions from the Federal Deposit Insurance Corporation under the laws, regulations and policies governing such sales." *Cather Aff.*, Ex. B, Dkt. 22. Completion of the Purchaser Eligibility Certification, without modification, was a prerequisite to any purchase. *Cather Aff.*, Ex. B, Dkt. 22.

The certification included language explaining that by signing it, the purchaser certified that all statements in it were true, correct and complete when made and would remain true at closing. *Cather Aff.*, Ex. B, Dkt. 22. One of the important statements to be certified as true was that neither the identity nor form of the purchaser, or any aspect of

the transaction, was created or altered with the intent to allow an entity otherwise ineligible to purchase the assets from FDIC to benefit directly or indirectly from the transaction. *Cather Aff.*, Ex. B, Dkt. 22.

All of these requirements were incorporated in Article IV of the October 22 loan sale agreement between IFB and FDIC. It stated as follows:

> **Representations Remain True**. Buyer represents and warrants that all information and documents provided to Seller or its agents by or on behalf of Buyer in connection with this Agreement and the transactions contemplated hereby, including, but not limited to the Purchaser Eligibility Certification, the Bid Certification, and the Confidentiality Agreement, are true and correct in all material respects and do not fail to state any fact necessary to make the information contained therein not misleading.

*Kantor Aff.*, Ex. 3, ¶ 4.4, Dkt. 9-5.

IFB was the high bidder for the Stilwyn loan interest at the auction. However, on October 7, 2009, after the auction but prior to any closing between FDIC and IFB, IFB entered into a loan purchase agreement with Anaconda, a non-bank. *Kantor Aff.*, Ex. 2, Dkt. 9-4. This agreement violated IFB's certifications in the Bid Package, including the Purchaser Eligibility Certification, Invitation to Bid and Bid Certification. Additionally, the October 7 agreement was a violation of IFB's representations in the October 22 loan sale agreement which incorporated the representations made in the Bid Package. IFB was therefore disqualified as a bidder on, or prospective purchaser of, the Stilwyn loan interest.

"If a breach of contract is material, the other party's performance is excused."

*State v. Chacon*, 198 P.3d 749, 752 (Ct.App. 2008) (citing *J.P. Stravens Planning Assoc., Inc. v. City of Wallace*, 928 P.2d 46, 49 (Ct.App. 1996). "A material breach of contract is a breach so substantial and fundamental that it defeats the object of the parties in entering into the contract." *Chacon*, 928 P.2d at 119. IFB's breach of the bank-only requirements of the auction was a material breach of its duties and obligations to FDIC. A major purpose of the documents in the Bid Package, and incorporated into the loan sale agreement between IFB and FDIC, was to make sure non-banks did not purchase the Stilwyn loan interest. Thus, allowing Anaconda and Portfolio, non-banks, to purchase the loan interest was a material breach.

Because of IFB's material breach, the FDIC properly indicated its intention not to proceed with the Stilwyn loan deal. Because of IFB's breach, the closing never occurred and FDIC did not deliver or indorse to IFB the Note, Bill of Sale, Deed of Trust, or the original Assignment and Assumption Agreement. *Barhoover Aff.*, ¶ 12, Dkt. 11-2. The documents remain in the possession of FDIC. *Id*.

Therefore, IFB never obtained an interest in the Stilwyn loan. As an assignor of IFB's rights in the Stilwyn loan, Anaconda likewise has no interest in the Stilwyn loan. The same is true for Portfolio. Accordingly, the Court will deny Plaintiffs' motion for summary judgment

    **C.**    *Defendant's Motion for Partial Summary Judgment*

FDIC requests an order directing Plaintiffs to release the Portfolio Assignment and Lis Pendens. FDIC argues that the Financial Institutions Reform, Recovery and

Enforcement Act ("FIRREA") requires it.

There is no dispute that FDIC succeeded to FBI's interest in the Note and Deed of Trust of the Blaine, County property. There is also no dispute that Plaintiffs caused to be recorded in the records of Blaine County, Idaho the Portfolio Assignment and Lis Pendens.

Plaintiffs contend, however, that FDIC no longer owns the Stilwyn Loan interest and therefore FIRREA does not apply. Plaintiffs argue that because FDIC relinquished ownership of the asset, the procedures governing its role as receiver no longer apply to the property.

As explained above, FDIC does own the Stilwyn Loan interest in the property. As such, pursuant to [18 U.S.C. § 1825(b)(2)](#), "[w]hen acting as receiver . . . no property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC]." Here, FDIC did not consent to any of these proceedings. Therefore, the Portfolio Assignment and Lis Pendens was improper. Accordingly, the Court will grant FDIC's motion for partial summary judgment.

## ORDER

**IT IS ORDERED:**

1. Plaintiffs' Motion for Summary Judgement (Dkt. 9) is **DENIED**.

2. Defendant's Motion for Partial Summary Judgment (Dkt.17) is **GRANTED**.

3. Plaintiff's Motion to Allow Late Filing of Affidavit of Gregg Lovell in Support of Plaintiff's Reply Memorandum (Dkt. 19) is **GRANTED**.

DATED: **February 13, 2011**



Honorable B. Lynn Winmill
Chief U. S. District Judge